UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KRISTEN K. BRYANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-2158 |
| | ) |
| THE PAVILION FOUNDATION, | ) |
| d/b/a THE PAVILION BEHAVIORAL | ) |
| HEALTH SYSTEM, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Kristen Bryant ("Bryant") commenced this action on June 14, 2012, pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"). She claims that her employer, the defendant Pavilion Foundation (the "Pavilion") interfered with her right to take FMLA leave, and when she returned to work after taking FMLA leave, the Pavilion retaliated against her for exercising her FMLA rights.

The Pavilion has filed a motion for summary judgment. Bryant filed a response, and the Pavilion filed a reply. The matter is now fully briefed.

## BACKGROUND

The Pavilion is a psychiatric treatment center located in Champaign, Illinois. It provides inpatient and outpatient services to patients with severe and chronic psychiatric, behavioral, emotional, and/or addictive diseases.

Bryant worked at the Pavilion for a short time in 2007. She was rehired as a Mental Health Technician ("MHT") in June 2008. She was eventually promoted to Lead MHT and worked primarily second shift in the inpatient youth unit. The patients in her unit suffered from a range of disorders and generally fell on the aggressive, hostile spectrum. Sometimes, a child would require a one-to-one staffing ratio. At times, two children in the unit would require one-to-one staffing. Bryant stated that there were a lot of outbursts, and things could get thrown, and there could be hitting or pushing or biting.

The job sometimes required Bryant to lift patients to assist them with their activities of daily living, and sometimes, to physically restrain a patient. MHTs frequently sit, stand, walk, kneel, and crouch, squat, or stoop. One time, Bryant was restraining a patient and was kicked in the back. Another time, she was thrown into a door frame. In another instance, she was running a group session and a patient kicked in the door, sending a chair toward Bryant which hit her in the back.

When Bryant became Lead MHT in or about the late summer or fall of 2009, she frequently worked weekends for which she received a higher rate of pay.

On May 28, 2010, Bryant was at her home when she injured her ankle. She saw a doctor who provided a note indicating that Bryant would be out of work until June 2, 2010. In the interim, an MRI was performed and she was diagnosed with a tear in her right ankle ligament. Bryant was referred to a specialist who filled out FMLA paperwork on June 3, 2010. The FMLA paperwork indicated that Bryant

could not perform the job functions of weight bearing, walking, and lifting. Bryant was placed in an orthopedic boot and excused from work from June 3 to June 15, 2010. The specialist extended her return date several times, to June 24, July 12, July 30, and August 30, 2010.

There is no dispute that Bryant was able and prepared to return to work on August 30, 2010. However, she was relieved of her position as Lead MHT, and returned to work as MHT with a commensurate pay reduction.

## ANALYSIS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### FMLA Interference

To prevail on a claim of FMLA interference, Bryant must show that her employer is covered by the FMLA and she was eligible for – and was entitled to take – FMLA leave. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011). Additionally, Bryant must show that she provided the requisite notice to take FMLA leave, and the Pavilion denied her FMLA benefits to which she was entitled. *Righi*, 632 F.3d at 408. In this case, the parties' only dispute is whether the Pavilion denied Bryant the FMLA benefits to which she was entitled.

Central to the dispute is when Bryant's FMLA leave began, and when it ended.

> The FMLA guarantees qualifying employees twelve weeks of unpaid medical leave each year. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 84 (2002). The purpose of the FMLA is, in part, "to entitle employees to take reasonable leave for medical reasons ... in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(2), (3). An employer is not required to pay an employee while the employee is on FMLA leave, 29 U.S.C. § 2612(c), though an "employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided," under the FMLA, 29 U.S.C. § 2612(d)(2).

*Repa v. Roadway Exp., Inc.*, 477 F.3d 938, 940-941 (7th Cir. 2007). If the employee returns to work by the time her FMLA leave expires, she must be restored to the position held at the time FMLA leave began

– or an equivalent position – unless the employee cannot perform an essential function of the job. *James v. Hyatt Regency Chicago*, 707 F.3d 775, 780-81 (7th Cir. 2013).

The Pavilion argues that Bryant's FMLA leave began on May 28, 2010, when Bryant provided notice that she injured her ankle and would be off from work. If that date is correct, Bryant's leave ended twelve weeks later, on August 20, 2010.

Bryant contends that she did not begin her FMLA leave until June 3, 2010, and it did not end until twelve weeks later, on August 26, 2010. Bryant argues that (1) her doctor did not complete the FMLA form until June 3; and (2) she "elected" to take paid time off and extended leave bank time prior to June 3. Her arguments are unavailing. 29 C.F.R. § 825.301(b) specifies that if the FMLA-qualifying reason occurs during a period of paid leave, "the employer may count the leave used after the FMLA-qualifying reason against the employee's FMLA leave entitlement." In Bryant's case, the FMLA-qualifying reason was an ankle injury; after she sustained the injury she received several days of paid leave which the Pavilion used against her FMLA leave entitlement, consistent with the Code of Federal Regulations. Moreover, the beginning date should have been no surprise to Bryant. Every communication she received from the Pavilion's third-party administrator indicated that she had applied for, and received, continuous medical leave beginning on May 28, and if she had any questions about whether her leave was covered under FMLA, she should contact her human resources representative.

The court agrees with the Pavilion that Bryant's leave ended on August 20, 2010.

Bryant also argues that on August 25, 2010, the Pavilion took over from its third-party administrator some functions pertaining to FMLA leave, to Bryant's detriment. But Bryant's legally-mandated FMLA leave ended prior to that date, so the change did not interfere with her FMLA rights. She also stated in her affidavit that on August 18, 2010,[1] the Pavilion sought internal applicants to replace her as lead MHT, indicating that the matter was "time-sensitive" and that Bryant would be demoted. Nonetheless, the candidates did not apply for the position until Bryant's leave was over, on August 25 and 27, and they were not hired until August 27.

Bryant contends that she could have returned to work sooner than August 30 if the Pavilion had scheduled her for a physically less demanding job or had not insisted that she be "100%" to return to her position. But "there is no such thing as 'FMLA light duty.'" *James*, 707 F.3d at 781. The Pavilion was not required to provide Bryant with work that was physically less demanding, and Bryant's previous injuries on the job indicate to the court that the "physical agility to manage patients" is an essential function of Bryant's job description.

---

[1] Viewing the evidence in the light most favorable to Bryant, the Pavilion does appear to have been confused as to whether Bryant's FMLA leave started on May 26 or May 28. Bryant states in her affidavit that she took paid leave beginning on May 26, but injured her ankle on May 28. This may have led to some confusion about whether her FMLA leave ended on August 18 or August 20. Regardless, the Pavilion did not hire Bryant's replacements until a week after her FMLA leave ended and Bryant had not returned to work.

FMLA Retaliation

Bryant also claims that she was retaliated against because she exercised her rights under the FMLA. To prevail on her retaliation claim, Bryant must show, among other things, that she suffered a materially adverse employment action because she exercised her FMLA rights. *James*, 707 F.3d at 781. The change must be *materially* adverse, such as a termination, demotion, reduction in wages, "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *James*, 707 F.3d at 782. The employer's action must be more than "mere inconvenience or an alteration of job responsibilities." *James*, 707 F.3d at 782. A demotion or pay reduction caused by the employee's failure to return to work at the expiration of FMLA leave is not a materially adverse action. *James*, 707 F.3d at 782.

In addition, Bryant must show that the employer had a discriminatory or retaliatory intent. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012). She may show the employer's intent by either the direct or indirect method of proof. *Nicholson*, 690 F.3d at 828. The direct method requires direct or circumstantial evidence that the Pavilion intended to punish Bryant for taking FMLA leave. *Nicholso*n, 690 F.3d at 828. Alternatively, Bryant may proceed indirectly and show that she was treated less favorably than another employee who did not take FMLA leave. *Nicholson*, 690 F.3d at 828.

Bryant submits an affidavit to augment her deposition testimony. To make a prima facie showing of FMLA retaliation, she relies entirely on her affidavit, paragraphs 24 through 28, without citation to any of her deposition testimony. In her memorandum, she argues that her retaliation claim "is a matter for which a trier of fact is in the best position to weigh the specific and fact-sensitive evidence[.]" Pl.'s Mem., d/e 34, p.9.

The cited paragraphs of the affidavit are as follows:

24. After returning to the Pavilion, I was continuously harassed and humiliated during the remaining time I was employed. From the moment I returned, the employees knew I was no longer employed in a supervisorial position, and I lost a tremendous amount of respect from employees with whom I had previously supervised. Because I had previously been employed as a LMHT, I would oftentimes informally be requested to assume the role of a LMHT due to staffing, even though I was no longer hired as such.

25. My hours were also cut after that time, and I was no longer receiving the same amount of overtime. The amount of hours I worked remained diminished during the remaining time I worked at the Pavilion.

26. I had continuously discussed problems I was having with the Pavilion with my supervisors Laurie Crabtree, Merci DeJesus, and Regina Cook until the time I left the Pavilion. I was always in continuous contact with the Pavilion in excess of what was necessary by law and the Pavilion's own policies.

27. Because of the Pavilion's illegal conduct, I was compelled to seek professional counseling through a number of providers, including Dr. Albert Lo and Andrea Cardoni. Both of these mental health professionals testified under oath that I suffered extreme distress as a result of the way I was being treated at the Pavilion.

28. After I left the Pavilion I received a position at Christie Clinic MOA-PSR, and currently make $11.00 an hour. I have not earned $13.00 an hour since I was wrongfully demoted with the Pavilion in 2010.

The statements in her affidavit are not the specific and fact-sensitive evidence she promises to present to a jury. Without specifics, she cannot survive summary judgment. She does not state who harassed and humiliated her, or how they did so. Nor does she state whether she was paid as a Lead MHT on the occasions when she assumed that role. She states that her hours were cut and overtime was reduced, but she agreed that, even prior to taking FMLA leave, staffing levels fluctuated and the number of MHTs needed was a day-to-day call, based on the number and needs of the residents in a unit. Sometimes, staff would be sent home, or to a different unit, based on the number of patients and their needs at any given time. *See* Bryant Dep. 41-48. Without specifics, Bryant cannot show an intent to retaliate. Finally, Bryant's demotion was not wrongful; the Pavilion had no obligation to keep her in the same position and pay level after her absence extended beyond her FMLA leave.

Details may or may not be found in Bryant's deposition testimony. But her deposition transcript is over three hundred pages, and the court is not obliged to scour the record to make her case for her. *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990).

## CONCLUSION

For the foregoing reasons, the motion for summary judgment [29] is granted. This case is terminated. The parties shall bear their own costs.

Entered this 13th day of February, 2014.

/s/Harold A. Baker

———————————————
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE